**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| DIANA M. PANOZZO, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 2:15-CV-160-PRC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of the | ) | |
| Social Security Administration, | ) | |
|     Defendant. | ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Diana M. Panozzo on April 23, 2015, and an Opening Brief [DE 19], filed by Plaintiff on September 8, 2015. Plaintiff requests that the January 17, 2014 decision of the Administrative Law Judge denying her claims for disability insurance benefits and supplemental security income be reversed and remanded for further proceedings or, alternatively, that the Court award benefits to her. On December 15, 2015, the Commissioner filed a response, and Plaintiff filed a reply on January 5, 2016. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

Plaintiff filed applications for disability insurance benefits and supplemental security income on August 14, 2012, alleging an onset date of July 10, 2012. Her claims were denied initially and upon reconsideration. Plaintiff timely requested a hearing, which was held on December 18, 2013. In attendance at the hearing were Plaintiff, Plaintiff's counsel, and an impartial vocational expert. On January 17, 2014, Administrative Law Judge (ALJ) David R. Bruce issued a written decision denying benefits, making the following findings:

    1.    The claimant meets the insured status requirements of the Social Security Act through December 31, 2017.

2. The claimant has not engaged in substantial gainful activity since July 10, 2012, the alleged onset date.

3. The claimant has the following severe impairments: hepatitis C, obesity, lumbar spine degenerative disc disease, and seizure disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to lift and carry up to 20 pounds occasionally and 10 pounds frequently, stand and/or walk for about 6 hours of an 8-hour workday, and sit for at least 6 hours of an 8-hour workday. The claimant can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but she should never climb ladders, ropes, and scaffolds. The claimant must avoid all exposure to unprotected heights, moving mechanical parts, and vibrations. The claimant is unable to operate a motor vehicle.

6. The claimant is capable of performing past relevant work as a license clerk, cashier/checker, salesclerk, and shipping and receiving supervisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

7. The claimant has not been under a disability, as defined in the Social Security Act, from July 10, 2012, through the date of this decision.

(AR 12-20).

The Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff filed this civil action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of the Agency's decision.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**STANDARD OF REVIEW**

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that [a reviewing court] may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If no, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if no, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's residual functional capacity (RFC), age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(I)-(v), 416.920(a)(4)(I)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite her limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 885-86; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

# ANALYSIS

Plaintiff seeks reversal and remand for further proceedings, or alternatively an award of benefits, arguing that (1) the ALJ did not properly evaluate Plaintiff's epilepsy under Listing 11.02 or Listing 11.03; (2) the ALJ improperly discounted the opinions of Plaintiff's treating neurologist; (3) the ALJ's credibility determination is patently wrong; (4) the ALJ failed to account for Plaintiff's mental limitations in assessing Plaintiff's RFC and in posing questions to the vocational expert; (5) the ALJ's RFC assessment is not supported by substantial evidence; and (6) the ALJ improperly analyzed evidence of Plaintiff's pedal edema, fatigue, headaches, and gastrointestinal conditions and failed to properly analyze Plaintiff's impairments in combination. The Court considers each argument in turn.

### A. Listings 11.02 and 11.03

At step three of the sequential analysis, the ALJ considered whether Plaintiff met or equaled Listings 11.02 (Convulsive Epilepsy) and 11.03 (Nonconvulsive Epilepsy) and found that Plaintiff met neither Listing. These Listings are as follows:

> 11.02 Epilepsy—convulsive epilepsy, (grand mal or psychomotor), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once a month in spite of at least 3 months of prescribed treatment. With:
> A. Daytime episodes (loss of consciousness and convulsive seizures) or
> B. Nocturnal episodes manifesting residuals which interfere significantly with activity during the day.
> 11.03 Epilepsy—nonconvulsive epilepsy (petit mal, psychomotor, or focal), documented by detailed description of a typical seizure pattern, including all associated phenomena; occurring more frequently than once weekly in spite of at least 3 months of prescribed treatment. With alteration of awareness or loss of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day.

20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 11.02-11.03.

The ALJ found that Plaintiff does not meet either Listing because he determined that the record does not provide a detailed description of a typical seizure pattern as required by the Listings. "Such description includes the presence or absence of aura, tongue bites, sphincter control, injuries associated with the attack, and postictal phenomena." 20 C.F.R. § Pt. 404, Subpt. P., App. 1 § 11.00(A). The ALJ also indicated that he found insufficient documentation of the frequency of Plaintiff's seizures in the record.

Plaintiff argues that the ALJ's analysis of the evidence was merely perfunctory and, thus, insufficient. Plaintiff notes that the ALJ's analysis regarding the Listings nowhere references the November 4, 2013 medical opinion of Dr. Sanjeev Maniar, Plaintiff's neurologist. This opinion is the only opinion by a neurologist in the record regarding Plaintiff's seizures. State agency physician Dr. R. Bond, who is not identified as an expert in neurology, reviewed Plaintiff's seizure disorder in January 2013, prior to August 2013, when Plaintiff reported having more seizures and was admitted for further evaluation of her seizures.

Dr. Maniar's November 4, 2013 Seizures Medical Source Statement appears to provide the detailed description of a typical seizure pattern as required by the regulations. (AR 471-74). The ALJ did not refer to this statement in determining whether Plaintiff's impairments meet the Listings,[1] and without indicating that this statement in some manner fails to provide the required description, found that the record does not provide any such description. Further, Chris Risner, a friend of Plaintiff, completed a seizure questionnaire that described Plaintiff's seizures. (AR 233-35). The ALJ did not refer to Risner's questionnaire in considering the Listings.

---

[1]Though the ALJ later refers to Dr. Maniar's November 4, 2013 medical opinion and assigns weight to the opinion, that discussion comes in the context of determining Plaintiff's RFC, not in determining whether Plaintiff's impairments meet a Listing.

8

Next, regarding the frequency of Plaintiff's seizures, Dr. Maniar opined in the aforementioned statement that Plaintiff has 2-4 convulsive (grand mal or psychomotor) seizures per month. (AR 471). In notes from a December 16, 2013 office visit with Dr. Maniar, information under the heading "Evaluation of previous appt" includes that Plaintiff reported having weekly seizures that were "rarely" grand mal seizures. (AR 505). Though the ALJ refers to Plaintiff's report of seizures in the December 2013 notes, the ALJ ignores the November 2013 medical opinion which states that there are seizures of a frequency and type to satisfy the frequency requirements of Listing 11.02. "An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009)).

The ALJ erred in failing to refer to Dr. Maniar's opinion and Mr. Risner's questionnaire in determining that the record does not support a finding that Plaintiff meets Listings 11.02 and 11.03. The ALJ's determination that Plaintiff's impairments do not meet the Listings due to a failure to provide a detailed description of a typical seizure and due to the frequency of the seizures is not supported by substantial evidence. Consequently, remand is required. On remand, the ALJ is instructed to consider Dr. Maniar's November 4, 2013 Seizures Medical Source Statement and Mr. Risner's Seizure Questionnaire in determining whether Plaintiff's impairments meet Listings 11.02 and 11.03.

Further, Plaintiff argues that the ALJ failed to obtain a medical opinion on whether Plaintiff's condition medically equals a listing. "Whether a claimant's impairment equals a listing is a medical judgment, and an ALJ must consider an expert's opinion on the issue." *Barnett*, 381 F.3d at 670

(citing 20 C.F.R. § 404.1526(b)); *see also* SSR 96-6p, 1996 WL 374180, *3 (July 2, 1996) ("[L]ongstanding policy requires that the judgment of a physician . . . designated by the Commissioner on the issue of equivalence on the evidence before the [ALJ] or the Appeals Council must be received into the record as expert opinion evidence and given appropriate weight."). Dr. Bond, a state agency physician, reviewed Plaintiff's seizure disorder, but that review occurred in January 2013, prior to Plaintiff's complaints of more frequent seizures later that year. On remand, the ALJ is instructed to obtain and consider a new medical expert opinion on medical equivalence regarding Plaintiff's seizure disorder.

## B. Weight to Medical Opinion

An ALJ is required to evaluate every medical opinion received, regardless of its source. *See* 20 C.F.R. §§ 404.1527(c), 416.927(c). Factors the ALJ considers in weighing medical opinion evidence include the examining relationship, the treatment relationship, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency, specialization, and other factors brought to the ALJ's attention. *Id.* §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Under what is known as the "treating physician rule," the opinion of a treating physician on the nature and severity of an impairment is given controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).

Though the ALJ noted that Dr. Maniar is Plaintiff's treating physician, the ALJ assigned little weight to Dr. Maniar's opinion because the ALJ determined that "it is not consistent with Dr.

Maniar's course of treatment (an office visit every four months in 2013) and Dr. Maniar did not report any significant clinical abnormalities in his treatment notes." (AR 19).

Plaintiff states that the ALJ's failure to assign controlling weight to Dr. Maniar's opinion was improper and cites to case law regarding assigning controlling weight to treating physicians. However, because Plaintiff provides no further argument on this point and the Court has already determined that remand is necessary, the Court need not address this issue.

Next, Plaintiff argues that this assignment of weight is in error because the ALJ failed to weigh the opinion in accordance with the factors laid out in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). Plaintiff asserts that the ALJ erred in not discussing Dr. Maniar's specialization in neurology, the length of his treating relationship with Plaintiff, and the fact that Mr. Risner's description of Plaintiff's abilities and conditions support Dr. Maniar's opinion. The Commissioner counters with case law that states that express discussion of the factors is not necessary. There is conflicting case law in the Seventh Circuit Court of Appeals regarding express discussion of the factors. *Compare Elder v. Astrue*, 529 F.3d 408, 415-46 (7th Cir. 2008) (affirming denial of benefits without express consideration of each factor), *with Yurt v. Colvin*, 758 F.3d 850, 860 (7th Cir. 2014) (requiring express consideration). Because this case is being remanded on independent grounds, the Court need not determine whether the ALJ's failure to expressly discuss the factors is reversible error. However, if the ALJ reaches this stage of analysis on remand, the Court directs the ALJ to expressly discuss the factors in 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6) if Dr. Maniar's opinion is not given controlling weight.

## C. Credibility Determination

In making a disability determination, the ALJ must consider a claimant's statements about her symptoms, such as pain, and how the symptoms affect her daily life and ability to work. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a). Subjective allegations of disabling symptoms alone cannot support a finding of disability. *Id*. The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

(1) The individual's daily activities;
(2) Location, duration, frequency, and intensity of pain or other symptoms;
(3) Precipitating and aggravating factors;
(4) Type, dosage, effectiveness, and side effects of any medication;
(5) Treatment, other than medication, for relief of pain or other symptoms;
(6) Other measures taken to relieve pain or other symptoms;
(7) Other factors concerning functional limitations due to pain or other symptoms.

*See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). "Because the ALJ is in the best position to determine a witness's truthfulness and forthrightness . . . [a] court will not overturn an ALJ's credibility determination unless it is 'patently wrong.'" *Shideler v. Astrue*, 688 F.3d 306, 310-11 (7th Cir. 2012) (quotation marks omitted) (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 504-05 (7th Cir. 2004)); *see also Prochaska*, 454 F.3d at 738. Nevertheless, "an ALJ must adequately explain his credibility finding by discussing specific reasons supported by the record." *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013) (citing *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009)); SSR 96-7p, 1996 WL 374186, at *2 (Jul. 2, 1996) ("The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.").

Plaintiff argues that the ALJ's credibility determination is patently wrong because the ALJ drew a negative inference from Plaintiff not taking medications for several months in 2011, because the ALJ did not acknowledge the assistance Plaintiff receives from family and friends in performing daily activities, and because the ALJ did not acknowledge that Plaintiff sought specialized treatment for her seizures and gastrointestinal issues.

The ALJ found Plaintiff's allegations of her seizure disorder not fully credible because, though she has a history of seizures, she did not take any medications for several months in 2011. The ALJ acknowledged that Plaintiff represented that she cannot afford treatment or medication. However, the ALJ discounted this representation, citing a lack of evidence that Plaintiff had been turned away from medical providers due to an inability to pay, the ability of doctors to provide free samples of medications, and the expense of Plaintiff's cigarette habit.

Before an ALJ may draw a negative inference regarding credibility from conservative medical treatment, the ALJ must look into the reasons for conservative treatment, such as inability to pay. SSR 96-7p, 1996 WL 374186, at *7-8. The ALJ did cursorily consider Plaintiff's statements that she is unable to pay for the treatment, as required, but he dismissed the statements due to a lack of supporting evidence and Plaintiff's smoking habit. There is no indication in the ALJ's decision that the ALJ asked Plaintiff for evidence of being refused medical care due to an inability to pay or of any requests for free samples of the medication she stopped taking. Further, the costs to Plaintiff of both her medication and her cigarette habit are unknown. *See Eskew v. Astrue*, 462 F. App'x 613, 616 (7th Cir. 2011) (finding no logical bridge where the ALJ dismissed the assertion that the plaintiff could not afford her medication because the plaintiff could afford cigarettes where there

was no evidence of the cost of either).² The ALJ has not given proper consideration to Plaintiff's given reason for not taking her medication during part of 2011 and should remedy this error on remand.

Next, Plaintiff argues that the ALJ's statement that Plaintiff is able to live alone should have been qualified with acknowledgment of the help Plaintiff receives from family and friends. The Court agrees that the ALJ's statement provides an incomplete assessment of the evidence in the record regarding Plaintiff's living situation. There is evidence in the record that Plaintiff depends on family and friends to drive her everywhere and to help her with housework. Additionally, evidence was presented that there are times when Plaintiff will remain in the car at a store while her friend shops for her. On remand, if the ALJ considers Plaintiff's living situation in determining her credibility, the ALJ should acknowledge the evidence that Plaintiff receives help in performing household activities. *See Scrogham v. Colvin*, 765 F.3d 685, 698-699 (finding reversible error in the ALJ's disregard of facts in the record that show limitations in the activities that the ALJ found the claimant able to perform).

Plaintiff argues the ALJ should have taken into account the specialized treatment she sought from Dr. Maniar for her seizures and from Dr. Harsh Dalal for her gastrointestinal issues. Though regulations indicate that the Social Security Administration "will consider all of the evidence presented" in evaluating symptoms, the regulations fall short of requiring explicit consideration of every piece of evidence in the record. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The lack of

---

²The Commissioner cites to cases indicating that an ALJ may consider the expense of cigarette or alcohol habits when considering a claimant's ability to pay for medication, but all of these cases are from outside of the Seventh Circuit Court of Appeals.

explicit consideration of the specialized treatment in determining Plaintiff's credibility is not an independent ground for remand.

### D. Consideration of Mental Limitations

In step two of the sequential analysis, the ALJ found that Plaintiff has mild limitations in activities of daily living, "no more than mild" deficiencies in social functioning, and mild limitations in concentration, persistence, and pace. (AR 13-14). However, the ALJ did not account for these limitations in his determination of Plaintiff's RFC, (AR 15-19), or include these limitations in the hypothetical questions that he asked the vocational expert, (AR 54-55). "When determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work including those that do not individually rise to the level of a severe impairment. A failure to fully consider the impact of non-severe impairments requires reversal." *Denton*, 596 F.3d at 423 (citations omitted); *accord Alford v. Colvin*, No. 1:14-cv-2098, 2016 WL 1127883, *10 (S.D. Ind. Mar. 22, 2016) (finding remand appropriate where the ALJ failed to include discussion of a non-severe impairment in determining the claimant's RFC and failed to include the non-severe impairment in the hypothetical questions posed to the vocational expert).

The Commissioner argues that the ALJ found that Plaintiff does not have any mental limitations, and thus, the RFC and hypothetical questions include all of the limitations and impairments that the ALJ found credible. However, this argument runs counter to the ALJ's explicit findings in step two. The ALJ's failure to include the mental limitations in his RFC analysis and in the questions posed to the vocational expert provides an independent basis for remand.

### E. Evidence Supporting the RFC Assessment

The RFC is a measure of what an individual can do despite the limitations imposed by her impairments. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The determination of a claimant's RFC is a legal decision rather than a medical one. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1); *Diaz*, 55 F.3d at 306 n.2. The RFC is an issue at steps four and five of the sequential evaluation process and must be supported by substantial evidence. SSR 96-8p, 1996 WL 374184, *3; *Clifford*, 227 F.3d at 870.

"RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing' basis means 8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184, at *1. "The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." *Id.* at *3. The relevant evidence includes medical history; medical signs and laboratory findings; the effects of symptoms, including pain, that are reasonably attributed to a medically determinable impairment; evidence from attempts to work; need for a structured living environment; and work evaluations, if available. *Id.* at *5. In arriving at an RFC, the ALJ "must consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." *Id*.

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ did not accept the limitations suggested by a state agency doctor or a treating physician. Plaintiff argues that the rejection of all of the suggested limitations left an evidentiary deficit regarding her RFC. However, an ALJ need not rely on a medical opinion in determining the RFC. *Schmidt v. Astrue*, 496 F.3d 833, 845 (7th Cir. 2007) (citing *Diaz*, 55 F.3d at 306 n.2). Still, the ALJ must identify the

evidence that he relied upon and explain how the evidence led the ALJ to the RFC finding. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011) (finding error in the ALJ's failure to cite evidence that supports specific limitations in the plaintiff's RFC).

Given that the Court has identified multiple errors to be corrected, the ALJ's assessment of Plaintiff's RFC—and the evidence cited in support of it—may change significantly on remand. Consequently, a close analysis of the ALJ's RFC assessment is not warranted at this time. On remand, the ALJ is directed to set forth the evidentiary basis for the RFC assessment.

### F. Analysis of Evidence of Impairments

Plaintiff argues that the ALJ improperly analyzed the evidence of Plaintiff's pedal edema, headaches, gastrointestinal conditions, and fatigue and failed to properly analyze Plaintiff's impairments in combination. An ALJ must consider all impairments—both severe and non-severe—when assessing a claimant's RFC. 20 C.F.R. §§ 404.1523, 416.923. An ALJ is required to consider the claimant's impairments in combination. *See Thomas v. Colvin*, 745 F.3d 802, 807 (7th Cir. 2014); *Terry*, 580 F.3d at 477 ("[W]e have frequently reminded the agency that an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation.").

Because the Court has already found that remand is necessary, the Court declines to make a ruling on whether there are errors in the ALJ's analysis of the evidence of the conditions identified by Plaintiff.

### G. Request for an Award of Benefits

An award of benefits is appropriate "only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the

17

applicant qualifies for disability benefits." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011). Based on the discussion above, remand, not an immediate award of benefits, is appropriate.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the Brief in Support of Plaintiff's Motion for Summary Judgment [DE 19], **REVERSES** the final decision of the Commissioner of Social Security, and **REMANDS** this matter for further proceedings consistent with this Opinion and Order. The Court **DENIES** Plaintiff's request to award benefits.

So ORDERED this 3rd day of August, 2016.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT
